### LOESER v. ALEXANDER.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1910.)

#### No. 1,955.

1. COUNTIES (§ 101*)—COUNTY TREASURER—BONDS TAKEN FROM DEPUTIES—OHIO STATUTES.

Rev. St. Ohio, § 1080, requires a county treasurer to give bond conditioned that he shall pay over according to law all public money which shall come into his hands. Section 1089 authorizes him to appoint one or more deputies, and provides that he "shall in all cases be liable and accountable for the proceedings and misconduct in office of his deputies." There is no provision requiring bonds from deputies. *Held*, that a bond required by a county treasurer from a "deputy collector of taxes" appointed by him, who was in legal effect a deputy treasurer, was not a public bond, but that the treasurer was personally the obligee, although the bond in terms ran to him as treasurer, and was entitled to sue or oth-

erwise proceed thereon in his own name, either before or after the expiration of his term of office, and without regard to whether or not he had made good to the county the defalcation of the deputy for which he sued for which he and his sureties on his own bond were liable.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 101.*]

2. BANKRUPTCY (§ 316*)—PROVABLE DEBTS—FIXED LIABILITY.

Bankrupt was surety on the bond given by a deputy collector of taxes in Ohio to the county treasurer for his individual protection, he being accountable and liable on his own bond for the taxes collected by his deputy. Prior to the bankruptcy, the deputy had become a defaulter by reason of the failure of a bank in which he deposited his collections. *Held*, that the liability of the bankrupt on the bond was not contingent, but was a fixed liability, provable against his estate, having been liquidated; that the right of the treasurer as obligee in the bond to prove the claim was not affected by the pendency of an action at law on the bond, nor the fact that the public authorities had recovered a portion of the shortage from the receiver of the bank in which the fund was deposited, which went only in reduction of the claim.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 316.*]

3. COUNTIES (§ 98*)—COUNTY TREASURER—BOND TAKEN FROM DEPUTY—BREACH OF CONDITION.

A county treasurer who was responsible on his bond for all taxes collected by himself or deputies and required by law to keep all public money in his office, appointed the cashier of a bank in a town at some distance from the county seat deputy collector of taxes for such town and the surrounding township, taking a bond from him conditioned that he should faithfully pay over to the treasurer all money collected by him, according to law. As collected, the tax money was deposited by the deputy in his bank in an account standing in the name of the treasurer, but with which he had nothing to do, having no passbook and making no checks thereon. In his own books he kept an account with the deputy, and on each settlement received payment from the deputy in cash and treasurer's warrants taken up by the deputy or the bank. The appointment of such deputy collector was in accordance with a custom in existence before he became treasurer, and was apparently for the accommodation of taxpayers. *Held*, that the deposit of the money in the bank by the deputy was not a payment of the same to the treasurer within the meaning of the bond, but that it remained in the custody of the deputy, and he continued liable therefor on his bond until it was actually paid over.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 98.*]

Appeal from the District Court of the United States for the Northern District of Ohio.

In the matter of Otho L. Hays, bankrupt. Appeal by Nathan Loeser, trustee, from an order allowing the claim of William L. Alexander. Affirmed.

W. J. Geer and J. N. Van Deman, for appellant.
H. M. Roberts, for appellee.

Before SEVERENS and WARRINGTON, Circuit Judges, and KNAPPEN, District Judge.

KNAPPEN, District Judge. This appeal brings up for review the order of the District Court, which affirmed the order of the referee allowing the claim of appellee, former treasurer of Crawford county, Ohio, against the estate of the bankrupt Hays, by reason of the lat-

ter's suretyship upon a bond given appellee by L. W. Blyth, as deputy collector of taxes. The facts necessary to an understanding of the case are these:

Appellee was elected treasurer of Crawford county in the year 1900, and re-elected in 1902. Bucyrus is the county seat. Galion is 12 miles distant therefrom, and in Polk township. For several years previous to appellee's election as county treasurer, it had been the practice of the treasurers of Crawford county to collect the taxes, which were payable semiannually on or before December 20th and June 20th of each year, against the residents of the city of Galion and Polk township through the Galion National Bank, by sending, semiannually, to the bank a tax duplicate for that city and township, for the guidance of the person collecting the taxes and the information of the taxpayers, together with blank tax receipts to be delivered upon payment of the taxes, and to appoint L. W. Blyth, who was cashier of the Galion National Bank, as deputy for the purposes of such collection, and accordingly styling him "deputy tax collector." The county treasurers were in the habit of making settlements on February 15th and (as stated in the record) August 15th of each year for the taxes collected by the bank, the latter paying over to the treasurer the amount collected, less warrants or vouchers on the treasurer which had been taken up by the bank, the same being in such settlement treated as cash. The date above given as August 15th is doubtless meant for August 10th. This arrangement was convenient for the taxpayers, and was attractive to the bank because it was thought to draw customers to the bank. In fact, a small percentage was charged by Blyth against the taxpayers after the expiration of the tax-paying period. Upon appellee's election as treasurer, the Galion National Bank, as well as another bank at that place, desired to make the tax collections. The Galion National Bank was preferred by appellee by reason of its familiarity with the work, and at the commencement of appellee's first term Blyth was made deputy collector; appellee exacting an indemnity bond to be executed by Blyth and all the officers of the bank. At the commencement of appellee's second term the former arrangement was continued, and the bond in question, dated December 17, 1902, given. This bond is in the penalty of $50,000, runs to "William L. Alexander, as treasurer of the county of Crawford, state of Ohio, his executors or administrators"; recites Blyth's appointment by Alexander as deputy tax collector for Polk township, Galion school district, and the city of Galion, for the collection of taxes charged upon the tax duplicates for 1902 and 1903, and delinquent personal taxes for the year 1900, etc., and is upon condition that Blyth shall "faithfully, honestly, and impartially discharge all and singular the duties enjoined on him by law, as such deputy collector, and honestly and faithfully pay over to the said William L. Alexander, treasurer as aforesaid, all moneys by him collected as such deputy collector in the manner directed by law." The sureties (other than the bankrupt Hays, who was president of the bank) were three directors thereof. After the giving of the bond in question, the taxes were collected and paid in the same way as for several years before appellee's election as treasurer. During appellee's incumbency, at least, the county commissioners knew that the taxes in question were

being collected at the Galion National Bank. During the entire time of appellee's treasurership, the taxes collected at the bank were credited on its books to the county treasurer, whether merely in his name of office or by the addition of his individual name does not appear. Appellee knew that such collections were deposited in the bank, and doubtless expected and intended that such deposits should be made. He did not, however, understand that the account was a regular open or check account. He had no passbook and no checkbook. He kept a book account with Blyth personally, charging him with the amounts collected. Previous to the collections on account of which the claim in question is presented, two checks had been drawn by appellee upon the bank, but they were drawn under special arrangement therefor. During appellee's incumbency the only settlements made between him and Blyth were the semiannual settlements in February and August of each year, at which time whatever remained of the taxes collected, after deducting the amount of auditor's warrants issued to city and township treasurers which had been taken up by Blyth, was turned over to the appellee in cash, either by Blyth or Hays. The collections up to October 5, 1903, were duly accounted for to appellee. From the last-named date to February 2, 1904, the taxes collected amounted to $48,-289.17, all of which had been deposited in the bank to the credit of the county treasurer, against which amount no checks or warrants had been drawn. No part of this amount has ever been paid to appellee, either individually or as treasurer, unless such deposit in the bank shall be held to be a payment to him. The bank closed its doors on February 15, 1904, nothing having been collected since February 2d. In Board of Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100, this court sustained a lien in favor of the county against the funds in the hands of the bank's receiver to the amount of $11,697.61 on account of the taxes so collected and deposited from October 5, 1903, to February 2, 1904, upon the ground that the county treasurer had no authority to deposit taxes collected as a general deposit in the bank; that the ordinary relation of debtor and creditor, therefore, did not exist between the bank and the county treasurer; and that the public funds so deposited were accordingly trust funds recoverable by the beneficiary to the extent to which they were identified in the hands of the receiver. For the balance of $36,-591.56, the commissioners have proved a claim against the bank's receivership estate, on which claim dividends amounting to 47 per cent. have been or are to be paid, leaving a balance of $19,393.54 unprovided for. For this amount Alexander presented his individual claim against the estate of the bankrupt Hays, which was allowed at the amount stated. Before the claim was presented, appellee's successor as county treasurer had been elected and had qualified, and since that time appellee has held no office in Crawford county.

The meritorious question presented here is whether the deposit in the Galion National Bank of the taxes collected was in and of itself a payment of the same to Alexander, and thus a compliance with the condition of the bond. Before proceeding, however, to the consideration of this question, it is necessary to notice certain preliminary objections which are raised against the provability of the claim.

The first of these objections is that the bond in question is a public bond; that it runs to the county treasurer as such, and is for the benefit of the county; and that Alexander individually had thus no interest as obligee in the bond, and so could not recover upon it. In our judgment, Alexander is the party in interest as obligee in the bond. By section 1080 of the Revised Statutes of Ohio, the county treasurer is required to give a bond approved by the county commissioners, payable to the state, and conditioned for "paying over, according to law, all moneys which come into his hands for state, county, township or other purposes." This bond is suable only in the name of the state. Hunter v. Commissioners, 10 Ohio St. 515. The Ohio statutes contain no express authority for appointing deputy collectors under that name; but, as was held by this court in Board of Commissioners v. Strawn, supra, the treasurer had the undoubted power to appoint Blyth a deputy for the purposes of making the collections in question. By section 1089 of the Revised Statutes of Ohio, express authority is given the county treasurer to appoint "one or more deputies," and it is expressly provided that the treasurer himself "shall, in all cases, be liable and accountable for the proceedings and misconduct in office of his deputies." The position of Blyth was, in a very proper sense, that of a deputy of the county treasurer, at least for the purposes of the collections in question. Section 1090 makes express provision for the receiving of and receipting for taxes by the deputy treasurer. The statute providing for the appointment by the treasurer of deputies makes no provision for the giving of a bond; and in State v. Meyers, 56 Ohio St., at page 348, 47 N. E. 139, reference is made to the relation between a county treasurer and his deputies in this language:

"The law goes no further than to authorize the treasurer, at his pleasure, to appoint one or more deputies, who hold their appointment only during the pleasure of the principal, who is answerable for the proceedings and misconduct of the deputy, and may, for his own protection, take a bond with sureties for the faithful performance of the services required of the deputy; but the latter takes no oath of office, nor gives bond to any public authority, and is in no sense a public officer, but a mere agent of the treasurer."

In our opinion, the view above expressed of the relations between the county treasurer and his deputy is the correct one; and, in our judgment, those considerations pertain equally to Blyth's relation toward his principal. We have no hesitation in holding that the bond in question was a valid common-law bond; that it was not a public bond, but was given for the sole benefit of claimant, and that he is the real obligee in interest therein. The fact that it runs to claimant "as county treasurer" is not inconsistent with such construction.

The objection is also urged that it does not appear that appellee has paid into the treasury the amount of Blyth's defalcation. This objection is not tenable. It overlooks the actual relations between appellee and the public authorities, as well as the personal nature of the collector's bond in question. By section 1115 of the Revised Statutes of Ohio, the county treasurer is required to make settlement with the county auditor on or before the 15th day of February and the 10th day of August in each year. By section 1120, the county treasurer is

required, immediately upon such semiannual settlement with the county auditor, to pay into the state treasury all amounts found due by the Auditor of State to belong to the state; and, by section 1122, to immediately pay to local treasurers all moneys belonging to local treasuries. By sections 1122 and 1125 penalties are imposed for failure to make such payments to the local treasurers and to the State Treasurer respectively; and by section 1126, in case of failure to make any settlement or payment required by law, at the time and in the manner prescribed thereby, suit is required to be instituted against the treasurer and the sureties upon his official bond, for the amount due from him, with 10 per cent. penalty thereon, under a provision that such suit "shall have precedence of all other civil business, and be prosecuted with all convenient speed." Under the law of Ohio, the county treasurer is an insurer of the safe-keeping of the public moneys, and his bond is security therefor. Even the fact that public moneys have been stolen from him is no defense to an action upon his bond for failure to account for and pay over such moneys. State v. Harper, 6 Ohio St. 608, 67 Am. Dec. 363. By the very failure, therefore, of the county treasurer to account for and pay over the amount of the defalcation in question, he and the sureties upon his official bond became, by operation of law, directly liable therefor. Under the facts above stated, liability upon the treasurer's official bond is presumed. If such liability has been in any way avoided or relieved against, the burden was upon the trustee to show it. The collector's bond being taken for the sole and direct benefit of the county treasurer, there is no reason why he should not be permitted to recover thereon for the very purpose of enabling him to meet his own and his sureties' direct liability by reason of the collector's defalcation, which, so far as pecuniary liability is concerned, is that of the county treasurer.

The objection that appellee has not been subrogated to the rights of the county, through payment of the amount of Blyth's defalcation, rests upon the erroneous conception that the bond in question is a public bond, and for the benefit of the county, and is answered by the conclusion we have reached that the bond is a private obligation for the direct and personal benefit of appellee.

The further objection is made against the provability of appellee's claim that the liability upon the bond is merely contingent, and that it is, moreover, unliquidated. Section 63a of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]) provides that "debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability as evidenced by * * * an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not," with provision for allowance or rebate of interest. Under the view we have taken of the bond in question, the liability of the obligors thereon became fixed upon the failure of Blyth to make payment to appellee of the moneys collected. The claim is thus not contingent, nor is the amount thereof unliquidated. The record expressly determines the amount which Blyth has collected and failed to pay over, the amount recovered or recoverable through sources other than the bond, and contains the express concession that "should the court find that this is a valid, provable and al-

lowable claim against the estate of the bankrupt, O. L. Hays, the amount to be allowed would be nineteen thousand three hundred ninety-three and $^{54}/_{100}$ ($19,393.54) dollars." The fact that the suit at law brought by appellee upon the bond has not been determined is thus not material. Nor did the action of the county authorities in enforcing the lien against the assets of the bank for the public funds identified as in the hands of the receiver, or in procuring the allowance of the remainder of its claim against the bank's receivership, and the collection of dividends thereon, relieve the obligors upon the collector's bond in question from liability to the appellee. The latter was not a party to such proceedings on the part of the county authorities; and unless the public authorities have, by novation or otherwise (of which there is no claim), released appellee from liability for his official omissions, the obligors upon the deputy's bond in question are not concerned in such action.

This brings us to the substantial question whether the condition of the bond has been performed by the payment to appellee of the moneys collected by Blyth. The record is express that such payment has not been made in whole or in part, unless by the mere deposit of collections in the Galion National Bank. It is the contention of the trustee, that such deposit, in view of the circumstances in which it was made, constituted payment to the appellee. This proposition is one of fact, and thus turns upon the question of the intention of the parties —that is to say, what they intended the bond to secure, whether the security afforded by it should be confined to the mere collection of the taxes and their deposit in the bank, or whether it should extend to an assurance that the money should eventually find its way into the personal hands of the treasurer. In considering this question of intent, the actual relations between Blyth, the bank and the county treasurer are naturally important.

The contention on the part of the trustee seems, in its effect, to be this: that Blyth's personal relation to the subject-matter extended only to the collection of the taxes and their deposit in the bank; that beyond this the arrangement was between the bank and the county treasurer; that by this arrangement it was intended that the relation of debtor and creditor should, from the time of the deposit, exist between the bank and the county treasurer; and that this arrangement was made in violation of and with the intent to evade the statute which requires the county treasurer to keep public moneys in his office at the county seat, "which shall constitute the county treasury"; and in support of this contention it is argued that appellee was moved to make the arrangement in question through considerations of his own personal benefit, either in payment of a political obligation or otherwise. In our opinion the trustee's contention is not justified by the record, the conclusion reached being that the parties intended that the money should be regarded as in the custody of Blyth, as between the latter and the county treasurer, until the funds should be actually paid over to the county treasurer upon the semiannual settlements provided by law. Among the considerations which have induced this conclusion are these: The record does not justify the inference that

the deposit of the tax moneys in the Galion National Bank was made or maintained for the personal benefit of appellee. There is nothing satisfactorily indicating that he received or expected to receive any benefit therefrom, either in the way of interest or other compensation, or that the arrangement was made through any motive other than the accommodation of the taxpayers in the city of Galion and in Polk township. The fact that appellee expected or intended or even stipulated that the collector should keep the moneys on deposit in the bank of which he was the cashier is not inconsistent with the conception of the collector's continued custody of the funds as between him and the county treasurer. Such requirement would be a natural safeguard. It was certainly to the interest of the county treasurer to preclude, so far as possible, the danger of loss of the moneys, and to prevent, so far as possible, the necessity of reliance upon the personal responsibility of the collector or his bondsmen. The method followed by appellee with respect to collections and settlements was identically the same as was practiced for several years before his treasurership. There was nothing secret about it. Nor is the fact that the bank credited the taxes upon its books to the county treasurer by any means decisive that the relation of debtor and creditor, as between the bank and the treasurer, was thereby created or intended to be created. Such method of designating the account does not necessarily amount to more than identification. While it is true that the failure to furnish appellee with a passbook and checkbook is not conclusive of the treasurer's relation to the deposit, the facts that settlements were not, even as between Blyth and the county treasurer, accomplished by such deposits; that, on settlements being made, the amount payable thereunder was paid directly to the appellee in cash, and not upon his draft or check; that appellee kept no book account with the bank, but did keep one with Blyth individually previous to the making of settlements; and that after such settlements the money was entirely drawn out, even including that belonging to the county treasury—are, especially when considered in connection with the lack of evidence that the transaction was attended with actual fraud or wrong intention of any kind on the part of appellee, strongly persuasive against the trustee's contention. The circumstances disclosed by the record justify the conclusion that the object of the bond was not merely to insure the deposit of the taxes in the bank, but that its object was (as shown by its condition that Blyth should "honestly and faithfully pay over to the said William L. Alexander, treasurer as aforesaid, all moneys by him collected, as such deputy collector, in the manner directed by law") to bind all parties involved to see that the money got eventually into the hands of the treasurer; thus indemnifying not only against Blyth's direct defalcation either before or after the deposit, but also against the insolvency of the bank in which the deposit was expected to be made.

It follows from these views that the judgment of the District Court is right, and should be affirmed.