# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## OCTOBER TERM, 1912

### 4270. WILLIAMS & COMPANY *v.* UNITED STATES FIDELITY & GUARANTY COMPANY.

1. Where, in consideration of the execution of a bond by a surety company, the condition of which was the faithful performance by the principal of a certain building contract, the principal executed a written instrument as a part of the application for the bond, agreeing to indemnify the surety company "against all loss, costs, damages, charges and expenses whatever resulting from any act, default, or neglect" of the principal, which the surety might "sustain or incur," the indemnity agreement of the principal was not merged in and extinguished by the bond, but suit for its breach could be brought thereon at any time within the statutory period.

2. The liability of the principal to the surety in the bond, under the indemnity agreement set forth above, does not constitute a claim provable in bankruptcy against the estate of the principal until the surety has actually paid the obligee in the bond the damages sustained by reason of the principal's default. No such damage has been sustained or incurred by the surety, within the meaning of the agreement, until after actual payment.

DECIDED OCTOBER 9, 1912.

Action on bond; from city court of Atlanta—Judge Reid. April 20, 1912.

The case as made by the petition was substantially as follows: The defendants entered into a contract for the building of a schoolhouse in the State of Florida. They executed to the trustees of the school a bond in the penal sum of $7,500, conditioned to comply faithfully with all of the terms of the contract. The bond further provided that if the principals should fail to comply with the con-

ditions of the contract to such an extent that the same should be
forfeited, the surety should have the right to assume the contract
and to sublet or complete the building, whichever the surety might
elect to do; that in the event of a breach of any of the conditions
of the bond the surety should be subrogated to all the rights of
the principals under the contract, and all deferred payments and
all money and property at that time due and payable, or which
might thereafter become due and payable to the principals under
the contract, should be credited upon any claim which the trustees
might make upon the surety because of the breach of contract.
The bond was issued pursuant to a written application made to
the surety company by the contractors, in which they agreed to
indemnify the surety "against all loss, costs, damages, charges, and
expenses whatever resulting from any act, default, or neglect of
ours that said United States Fidelity & Guaranty Company may
sustain or incur by reason of its having executed said bond or any
continuation thereof." The agreement further provided: "And
we do further agree, in the event of our being unable to complete
or carry on the aforementioned contract, to assign such plant as
we may own, or have upon said work, to the said United States
Fidelity and Guaranty Company, that it may use the same in the
prosecution of said work to completion. We hereby further agree,
for ourselves, our heirs, executors, and administrators, to accept
the vouchers or other evidence of any losses paid by the United
States Fidelity & Guaranty Company, under the aforesaid obliga-
tion, together with vouchers, or other evidence of payment, of all
costs and expenses whatever incurred by the said United States
Fidelity & Guaranty Company in adjusting such loss or in com-
pleting said contract, as conclusive evidence against us and our
individual estates of the fact and extent of our liability, under said
obligation to the said United States Fidelity & Guaranty Company.
And we do further agree, in the event of any breach or default on
our part of the provisions of the contract hereinbefore mentioned,
that the United States Fidelity & Guaranty Company, as surety
on the aforesaid bond, shall be subrogated to all our rights and
properties as principals in said contract, and that deferred payments
and any and all moneys and properties that may be due and pay-
able to us at the time of such breach or default, or that may there-
after become due and payable to us, on account of said contract

shall be credited upon any claim that may be made upon the
United States Fidelity & Guaranty Company under the bond above
mentioned." The application, with the agreement made by the
contractors embodied therein, was under seal and duly signed by
the contractors.

The application was made on March 24, 1900, and the bond was
executed on March 29, 1900. The contractors having defaulted,
suit on the bond was brought against the principals and the surety,
and on July 1, 1904, judgment was duly rendered against them,
and on February 20, 1905, the surety paid the judgment, amount-
ing to $5,475.36. The present suit was brought by the surety
against the principals in the bond, to recover this sum, together
with certain sums paid by the surety for attorney's fees, costs,
and other expenses, in connection with the litigation. After set-
ting forth the facts above detailed, the plaintiff alleges that by
reason of these facts, the defendants are liable, jointly and severally,
to indemnify and pay over to the plaintiff the loss, costs, damages,
and charges above set forth, all of which, it is averred, resulted
from the default of the defendants under the contract, for the
faithful performance of which the bond was given and the in-
demnity contract made. The defendants demurred to the petition,
upon the ground that it did not distinctly appear upon what
cause of action the plaintiff had declared,—whether for money
paid for the use of defendants or upon the judgment rendered
against the plaintiff, or upon the bond upon which the plaintiff was
surety, or upon the application for the bond, containing the in-
demnifying agreement on the part of the defendants. It is in-
sisted by the demurrer that if the suit is based upon the applica-
tion, the petition should be dismissed, because the application was
extinguished when the bond was issued, and could not serve as a
cause of action against the defendant, having been merged in the
bond; that if the action is based upon the bond, it fails, because
the bond was merged in and extinguished by the judgment; that
if the suit is based upon the judgment, it should be dismissed, be-
cause it does not appear that the judgment was ever assigned
to the plaintiff, and because the action is barred by the statute of
limitations; that if the cause of action is for money paid for the
use of defendants, it is likewise barred by the statute of limitations.
The demurrer raised the further objection that the contract made

by the defendants with the school trustees is not set forth in or attached to the petition. The demurrer was overruled; The defendants answered, admitting the execution of the bond and the application, copies of which were exhibited. with the petition. The answer also admitted the recovery of a judgment in the State of Florida, and contained the special defense that on May 28, 1901, the defendants filed their petition in bankruptcy and were duly adjudged bankrupt, and on October 5, 1901, were discharged in bankruptcy.

The case was submitted to the presiding judge, without the intervention of a jury, upon an agreed statement of facts. The amount of liability was agreed upon, if the defendants were liable at all. It was further agreed that on November 9, 1900, the defendants abandoned their contract with the trustees of the school in Florida for the erection of the schoolhouse referred to in the bond executed by the plaintiff as surety; that immediately thereafter the trustees took charge of the building, and on April 13, 1901, completed it, and that on May 14, 1901, they gave notice of its completion to the plaintiff as surety on the bond referred to, and made·demand upon the surety for payment of the amount that they had expended upon the building in excess of the contract price; that on May 28, 1901, the defendants filed a voluntary petition in bankruptcy, and on the same day were duly adjudged bankrupt; that in the schedule attached to the petition it was recited that in April, 1900, the defendants entered into a contract for the building of the schoolhouse referred to in the bond; that to guarantee the completion of the contract the bond was executed, with the plaintiff as surety thereon; and that the school board terminated the contract by taking charge of the building and completing it. It was recited in the bankrupts' schedule that, "Whether or not there will be any liability on said bond petitioner is unable to say, as the matters involved in said contract and said building and the termination thereof have not been adjusted." In the schedule of creditors whose claims were unsecured appeared the name of the plaintiff, with the statement that the petitioners' liability to the surety company was fully described in another schedule, referred to above. On July 31, 1901, the trustees of the school proved their claim in the bankrupt court for $6,876.08, for money expended in building in excess

of the contract price. No dividend was paid to creditors, the assets (amounting to about $301) being consumed in the administration of the estate. On September 20, 1901, the defendants filed their petition for discharge in bankruptcy, and on October 5, 1901, an order of discharge was duly granted. Upon this agreed statement of facts a judgment was entered against the defendants for the amount which had been agreed upon as the amount of their liability if they were liable. They excepted to the overruling of the demurrer, and to the final judgment.

*Green, Tilson & McKinney,* for plaintiffs in error.
*Smith, Hammond & Smith,* contra.

POTTLE, J. 1. There is no merit in the demurrer. The cause of action declared upon is clearly for the breach of the indemnity agreement embodied in the application for the bond. This agreement and the payment of the premium mentioned in the application constituted the consideration for the execution of the bond. The agreement was certainly not extinguished by the execution of the bond, for upon its face it was to have no force and effect unless the surety company became liable on its undertaking. It is true that the principals in the bond would have been liable over to the surety upon an implied obligation to reimburse it for any loss it might have sustained, even though no express agreement to this effect had been made, but there was certainly no legal objection to the execution of an express agreement, in consideration of the execution of the bond, to do that which the law would have compelled the principals to do without an agreement. The petition set forth a cause of action of the nature above indicated; and it was not barred by the statute of limitations, nor was it subject to any of the grounds of demurrer filed by the defendant.

2. The only remaining question is whether or not the defense of discharge in bankruptcy was good; and this question depends upon whether the plaintiff's claim was a debt provable in bankruptcy, within the meaning of the bankrupt act. Debts which are provable in bankruptcy are classified in § 63 of the bankrupt act, which is as follows: "Debts of the bankrupt may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have

been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; (2) due as costs taxable against an involuntary bankrupt who was at the time of the filing of the petition against him plaintiff in a cause of action which would pass to the trustee and which the trustee declines to prosecute after notice; (3) founded upon a claim for taxable costs incurred in good faith by a creditor before the filing of the petition in an action to recover a provable debt; (4) founded upon an open account, or upon a contract express or implied; and (5) founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interests accrued after the filing of the petition and up to the time of the entry of such judgments. Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate." Collier, Bankruptcy (9th ed.), 1355. Unless a debt is an obligation susceptible of being presented in such form as to come within some one or more of the classes of debts designated in § 63, supra, as "provable" debts, whether actually presented or not, it is not defeated by the discharge in bankruptcy. Remington, Bankruptcy, § 628. "And the question whether or not a debt is provable turns upon its status at the time of the filing of the petition." Remington, Bankruptcy, § 629. In re Pettingill, 14 Am. Bankr. R. 728 (137 Fed. 143, 840, 70 C. C. A. 338). There is a distinction between provable debts and allowable debts. A debt is, of course, not allowable unless it is provable, but it may be provable without being allowable. Allowability implies not only provability but also validity. If for any reason the claim is improper, or if there be a good defense to it, it is not allowable, although it may be provable as a debt. Remington, Bankruptcy, § 632. Generally, contingent claims are not provable, although some classes of unliquidated demands may be proved in bankruptcy. Mr. Remington thus states the rule: "The test as to whether a claim is really contingent or is simply unliquidated or unascertained by legal proceedings would seem to be this: Have all the facts necessary to be proved to fasten liability already occurred? If so, the claim is not contingent, although the liability and the extent of damages may not yet have been ascertained by

the consideration of a court as evidenced by judgment or decree, nor even the full extent of damages arising been already suffered. The contingency, in other words, is a contingency of facts necessary to fasten liability at all, not a contingency of the court's judgment on the facts nor a contingency as to the extent of the damages resulting from the injury. Again, so long as it remains uncertain whether a contract or liability will ever give rise to an actual duty or liability, and there is no means of removing the uncertainty by calculation, it is too contingent to be a provable debt." Remington, Bankruptcy, § 641. A distinction must be drawn between a contract of indemnity and a contract whereby one person obligates himself to pay another's debt. In the case of a mere contract of indemnity, no action can be maintained for a breach until actual payment by the obligee. The distinction has thus been stated by our Supreme Court in a case where a partner retired and the partner remaining obligated himself to pay the debts of the firm. Upon this point, the court said: "The contract entered into between the plaintiff and the defendant at the time the firm dissolved was one by which the defendant obligated himself to pay the debts of the firm, and in such a case there is a breach of the contract whenever the partner agreeing to pay the debts fails to do so, and the outgoing partner can maintain a suit without having paid anything himself. The rule is otherwise when the contract is simply one of indemnity, or to hold the partner harmless; in which case no right of action arises in favor of the outgoing partner until he has either paid voluntarily or been compelled to pay debts against the payment of which he has been indemnified." *Tucker* v. *Murphey,* 114 *Ga.* 662, 663 (40 S. E. 836). See, also, to the same effect, *Harvey* v. *Daniel,* 36 *Ga.* 562, where it is distinctly ruled that when a mere indemnity bond is given against the payment of money, the plaintiff, in order to recover for a breach, must show loss or damage sustained by the actual payment of the money, or that which the law considers equivalent to an actual payment, the existence of a mere legal liability to pay not being sufficient. This distinction has received well-nigh universal recognition. See 16 Am. & Eng. Encyc. Law (2d ed.), 178, 22 Cyc. 79. In Wicker v. Hoppock, 6 Wall. 94 (8 L. ed. 752), the Supreme Court of the United States drew the distinction very clearly between the two classes of contracts, and said that in a

contract of indemnity the obligee could not recover until he had been actually damnified, and then only to the extent of the injury he had sustained up to the time of the institution of the suit, but in the case of an agreement to pay, recovery might be had as soon as there was a breach of the contract, and the measure of the damages should be the full amount agreed to be paid. See, also, *Sapp* v. *Faircloth,* 70 *Ga.* 690, 693, and *Thomas* v. *Richards,* 124 *Ga.* 942 (53 S. E. 400). If at the time of the filing of the petition the liability of the bankrupt is fixed so that upon the happening of a contingency the amount could be ascertained by computation, it is a provable claim, if the contingency happens in time to prove the claim under the act, and such a claim may be liquidated, if necessary, in the bankrupt court. Loveland, Bankruptcy, 598.

The decisions are not entirely in harmony in reference to the provability of claims of a somewhat similar nature to the one involved in the present case. In Insley *v.* Garside, 10 Am. Bankr. R. 52 (121 Fed. 699, 58 C. C. A. 119), the court declined to allow the surety on a bankrupt's bond to prove his claim. In Wood *v.* U. S., 16 Am. Bankr. R. 21 (143 Fed. 424), the court expressed the opinion that the claim of a surety might be proved and liquidated in the bankrupt court, because at the time of the filing of the petition the liability to the surety had been incurred. In Clemmons *v.* Brinn, 7 Am. Bankr. R. 714 (36 Misc. Rep. 157, 72 N. Y. Supp. 1066), it was held that the liability of the defendant upon a replevy bond given to a sheriff was too contingent to be provable against the defendant's estate in bankruptcy. In re Roth & Appel, 181 Fed. 667 (104 C. C. A. 649, 31 L. R. A. (N. S.) 270), the Court of Appeals for the Second Circuit held that a lease which provided that in case the lessee should be declared bankrupt the lease should terminate, and the lessor should have the right to re-enter, and that in such case the lessees should indemnify the lessor for any loss of rents during the remainder of the term, does not create a fixed liability absolutely owing at the time of the filing of the petition, and that the liability is altogether too contingent to be provable in bankruptcy. The plaintiff in error relies upon Loeser *v.* Alexander, 24 Am. Bankr. R. 75 (176 Fed. 265, 100 C. C. A. 89), decided by the Circuit Court of Appeals, Sixth Circuit. In that case it was held that where a deputy col-

lector of taxes executed to the treasurer a bond to faithfully dis-
charge all the duties required of him by law, and honestly and
faithfully pay over to the treasurer all moneys collected by him,
the bond was a personal bond to the county treasurer, who. had a
right to proceed thereon in his own name, and the liability of the
bankrupt upon the bond was not contingent nor unliquidated,
but a fixed liability under the bankrupt act, absolutely owing at the
time of the filing of the petition against him, the liability having
become fixed upon the failure of the deputy to make payment of
the money collected.   The distinction between that case and the
one now in hand seems to be obvious.   The obligation of the deputy
was to pay, and the. amount he was to pay was absolutely fixed
and determined at the time the petition in bankruptcy was filed.
Reliance is also placed upon the decision in re Lyons Sugar Com-
pany, 27 Am. Bankr. R. 610 (192 Fed. 445).   In that case, how-
ever, it appeared that the liability was absolutely fixed and
definitely ascertained at the time the petition in bankruptcy was
filed, although the surety was not compelled to pay the amount
stipulated in the bond until some time after the filing of the
petition.   The obligation in that case was to pay costs of an appeal.
It was held that by the affirmance of the judgment appealed from,
the claim became "liquidated by litigation," within the meaning of
the bankrupt act.

The question whether the contract is strictly one of indemnity
or an absolute obligation to pay the debt of another depends upon
the construction of the contract.   "Indemnity" has been defined
as the "obligation or duty resting on one person to make good any
loss or damage another has incurred while acting at his request
or for his benefit."   22 Cyc. 79.   Here the obligation was to in-
demnify the plaintiff "against all loss, costs, damages, charges
and expenses whatever, resulting from any act, default or neglect"
of the principals in the bond, that the surety "may sustain or
incur" by reason of the execution of the bond.   It is insisted that
the word "incur" should be given its ordinary meaning, "to become
liable for."   See Bank of Indian Territory v.. Eckles, 18 Okla. 159
(91 Pac. 695).   Several authorities are relied on by the plaintiff
in error to sustain this view.   Most of them are clearly distinguish-
able from the present case.   For instance, in Jarvis v. Sewall, 40
Barb. 449, the obligation was to pay any sum which the surety

"might incur and become bound to pay by reason of having executed the appeal bond." It was held that in order to recover upon the indemnity bond, it was not necessary to show that the surety had actually paid the costs incurred on the appeal in reference to which the bond was given. The case turned upon the construction of the words "become bound," and they were held to be synonymous with to "become liable for," or "liable to pay." So in McBeth *v.* McIntyre, 57 Cal. 49, where a similar ruling was made, the obligation of the indemnity bond was against all damages, expenses, costs, and charges, and against all loss and liability which the surety might incur. That case turned upon the meaning of the word "liability." The case of Jones *v.* Childs, 8 Nev. 121, is very similar. The construction contended for by the plaintiff in error does find support in the case of Smith *v.* Howell, 6 Exch. 730 (86 Rev. Rep. 452), and Mewburn *v.* Mackelcan, 19 Ont. App. 738.

We do not think that under a proper construction of the indemnity contract, the principals in the bond became liable to the surety until the surety had actually sustained a loss by payment of some sum of money which it had been compelled to pay on account of the neglect or default of the contractors. At the time the petition in bankruptcy was filed the surety had not sustained or incurred any loss or damage on account of the contractors' default. It is true the default had taken place, and it is also true that the building had been completed by the trustees, and they were probably in a position to ascertain the exact amount of the contractors' liability, but no judgment fixing the amount of the contractors' liability had been obtained. The only information that the surety could have had on the subject was the claim made by the trustees of the school; and it could not know but that the contractors might have a good defense to the claim, or some part of it; and no judgment was rendered fixing the liability of the contractors until nearly three years after they were discharged in bankruptcy. But the question to be considered is as to the nature of the surety's claim against the bankrupts. The bankrupts owed the surety nothing at the time the petition in bankruptcy was filed, because the surety had paid nothing for their benefit and the relation of debtor and creditor did not exist between them until after actual payment by the surety. The only thing the surety

could have done would have been to file in the name of the trustees their claim against the bankrupts, in order to have reduced its own liability by whatever might have been recovered out of the bankrupts' estate. The surety had no claim against the bankrupts which it could file in its own name, and the trustees did file their claim, although no dividends were received, the assets being insufficient for this purpose. The liability to the surety by the bankrupts was altogether contingent and might never have arisen. Indeed, we hold that at the time the petition in bankruptcy was filed the surety had no claim or debt against the bankrupt which could have been proved in the bankrupt court under § 63 of the bankrupt act. The result of this conclusion is that the judgment of the trial court in the plaintiff's favor must be    *Affirmed.*