HARRIS *vs.* THE CITY OF ATLANTA *et al.*

1. The non-suit was properly granted so far as the city of Atlanta was concerned—said city not being responsible for the acts of its police and subordinate officers in illegal arrests and consequent imprisonment, under the decision in *Cook vs. The City of Macon.* 54 *Ga.,* 468.

2. Where the police arrest one on the suspicion that he is an escaped convict from the penitentiary of the state, the prisoner should be carried before a magistrate within a reasonable time after such arrest,

in order to have the suspicion judicially verified, and the same duty is devolved upon the station-house keeper who receives the prisoner. *Aliter*, if the arrest be for violation of city ordinances.

3. Whether the detention be for an unreasonable time is a question for the jury under all the facts and circumstances of the case.

4. If the person arrested is at the time of such arrest an escaped convict, he cannot recover at all in an action for such arrest and false imprisonment, unless the detention was protracted unnecessarily and without reason; but the officer arrests and detains him at his peril, and he must show by competent proof that the prisoner is an escaped convict.

5. The mere oral evidence of the officer that he ascertained that the prisoner was an escaped convict is insufficient proof thereof; the record of his conviction and sentence is the higher and better evidence.

6. Where the last day for serving a bill of exceptions falls on Sunday, service on the following Monday is sufficient. (R.)

Municipal corporations. Officers. Damages. Evidence. Practice in the Supreme Court. Before Judge HILLYER. Fulton Superior Court. April Term, 1878.

Harris brought case for false imprisonment against the City of Atlanta, one of its policemen, and its two guardhouse keepers. On the trial, the evidence for plaintiff was, in brief, as follows:

1. Plaintiff, by interrogatories: On June 30, 1877, he was in the city of Atlanta; came from his home some miles out to collect some money due him. While standing on the sidewalk two policemen approached and asked his name. He said "Wesley Harris." They did not believe it. He insisted that it was. They said that they suspected him and "would put him up a while and see." They took him to the city station-house—Goodson (one of defendants) in charge of him. He was put into the station-house and kept there by its keepers. He remained there for four days. Once they took him out, made him let down his breeches, examined him, and then put him back. On July 4th, Goodson took him to a convict camp on the outskirts of the city. He asked the boss if he knew the prisoner. The

boss said, no.   After some parley a person was found who identified him as Harris.   Plaintiff's attorneys came up with a *habeas corpus*.   After some talking plaintiff was liberated.   Actual damages from loss of time, etc., shown, amounting to some $12.00, besides general damages.   The persons who thus imprisoned him, without cause, were city policeman Goodson and the city station-house keepers, Cook and Mehaffey.   The place of confinement was the city station-house.   No other reason for arrest than suspicion.

2. Thomas.   Am chief of Atlanta police ; was so at the date of arrest, etc.   Goodson was, and still is, a city policeman in the employment and pay of the city, just as he was then.   Cook and Mehaffey were, and still are, keepers of the city station-house, in the employment and pay of the city.   This station-house is one occupied by the City of Atlanta for various municipal purposes.   It contains cells for offenders against the city, a recorder's court-room, general police room, offices, etc.   The duty of the station-house keepers is, and was, to stay at this house, look after it generally, keep a book of records of the police, and do other minor duties.   They do not go out on patrol duty, make arrests, or other things done by the general police force.   They and the station-house are entirely for the convenience of the city.   They are under the control of the city, not of the state.   Police book of records and chief's report to city commissioners identified—both required by ordinance.   This was report for June.   It included this arrest and went before the commissioners at their meeting.

3. Police record book, showing that this arrest was "on suspicion," and prisoner was discharged by arresting officer.

4. Chief's report showing number of arrests made by Goodson, and commending him for industry in that month.

5. City charter, etc., showing general duties of city police commissioners, requiring police book to be kept, and chief's monthly report.

Plaintiff closed. The court granted a non-suit as to the city. Plaintiff excepted. Evidence for other defendants was, in brief, as follows:

1. Goodson. I made the arrest. It was on suspicion, as shown by the police book—suspicion that he was an escaped convict. I used to be at a convict camp. Plaintiff was then there. I left for a while. When I went back plaintiff was not there. I heard he had escaped. When I met him in Atlanta I arrested him. After keeping him several days, I failed to identify him sufficiently as a convict and let him go. Have since determined he was a convict. Have re-arrested him and turned him over to the principal keeper of the penitentiary. Do not know where he is now. He was not carried before any magistrate, or trial had.

2. Cook. Was station-house keeper with Mehaffey. Was off duty when arrest was made. Returned, found prisoner there, and kept him with other prisoners until let out.

Under the charge of court, the jury found for defendants. Plaintiff excepted.

The following rulings, among others, are assigned as errors:

1. Because the court granted the non-suit as to the city.

2. Because the court refused to charge the following request: "If plaintiff was arrested for an escape, it was the duty of the person or persons arresting and detaining him to use reasonable diligence to carry him before a court of competent jurisdiction for trial or commitment."

Instead of this, the court charged as follows: "It was not necessary to carry plaintiff before any magistrate or court; if he was a convict escaped, they had already pronounced upon him."

3. Because the court charged as follows: "If plaintiff was an escaped convict and the police arrested him, it would be said in law that they did no more than their duty, and

they would not be liable.  *   *   *   If there was probable cause for arrest, no damages could be recovered except actual damages.  *   *   *   If the officers in good faith arrested and imprisoned plaintiff, as an escaped convict, and they had reasonable cause for such an arrest, they would not be liable."

4. Because the court allowed defendant Goodson, over plaintiff's objections, to testify as follows : " The suspicion was that he was an escaped convict.  *   *   *   I heard he had escaped.  *   *   *   I have since determined that he was such (a convict), and have re-arrested him and turned him over to the principal keeper of the penitentiary ; I do not know what has become of him."

(The court added a note to the bill of exceptions, in which he stated that the witness, Goodson, testified that when he missed the plaintiff from the penitentiary convict camp, he was informed that he had escaped, and that it was on this information that he acted in making the arrest ; and that it was when this last statement came out that the court ruled the testimony in.)

When this case was called in the supreme court, the court suggested that service had been perfected on all the defendants in error except one within the time prescribed by law. As to Goodson, the bill of exceptions was certified July 18, 1878, and on July 29th the sheriff entered service upon him. July 28th was Sunday. The court called for authority upon the question of dismissal. After examination the writ of error was retained.

JACKSON & LUMPKIN ; F. L. HARALSON, for plaintiff in error, cited as follows:   On service of bill of exceptions, Code, §4, p. 8; 23 *Ga.*, 49 ; 33 *Ib.*, 146 ; 12 *Ib.*, 93 ; 14 *Ib.*, 122 ; 57 *Ib.*, 244 (rule of exclusion is not inclusion) ; Code, §4259.   Non-suit error, Code, §§1680, 2961 ; 18 *Ga.*, 412 ; 38 *Ib.*, 346 ; 46 *Ib.*, 80 , 19 Pick., 515, *et seq*. ; 5 Gray, 110, 119 ; 40 N. Y., 442, 448 *et seq*. ; 17 *Ib.*, 386.   Differs from

54 *Ga.*, 468. Ratification, 58 *Ga.*, 216; 19 Pick., 515 *et seq.* On evidence, 32 *Ga.*, 557. Trial of escape necessary, Code, §4484; acts 1876, p. 112; Code, §4725.

W. T. NEWMAN, for the City of Atlanta, cited: On non-suit, 2 Barb., 107; 35 Barb., 177; 1 Hill, 550; 1 Allen, 101, 172; 9 La., 462; Dillon on Mun. Corp's, §773; 54 *Ga.*, 468 ;acts 1874, p. 116.

JACKSON, Justice.

This suit was brought against the city and certain keepers of the guard-house and policemen for false imprisonment and unreasonable compulsory detention. The plaintiff was non-suited and excepted.

1. The non-suit was right so far as the city is concerned, under the decision in *Cook vs. the City of Macon,* 54 *Ga.*, 468.

2. Was the judgment right as respects the officers who made the arrest and detained the plaintiff? We think that the true rule is, where arrest is made on suspicion that one has violated a law of the state, it is the duty of the officers, whether policemen or station-house keepers, to take the person arrested before a magistrate and have the suspicion judicially verified within a reasonable time. The rule may be otherwise in case of mere violations of city ordinances. Indeed, in such cases the practice, we believe, is to take parties to the recorder's court the next day, and such is the law—at least no law against it occurs to us. But as this man was arrested on suspicion of having escaped from the penitentiary, and thereby having committed a crime against the state, he ought to have been taken before some officer authorized by law to commit or discharge him within a reasonable time; otherwise he might be detained indefinitely at the will or caprice of the police or of the station-house keeper.

3. In this case, whether or not he was unreasonably de-

tained, is a question for the jury, upon which we express no opinion. It should be left to that body to determine it when the case is again tried, and each officer should be dealt with as his conduct individually showed any illegal arrest, or any unreasonable detention of the plaintiff.

4. If it turn out on the trial that the plaintiff was an escaped convict when he was arrested, then his arrest was right, and the only recovery which he could make would be for detention alone ; and he would have to make a strong case, and show that he was unnecessarily and oppressively kept in custody, and not *bona fide*, and with a view to have the truth judicially ascertained within a reasonable time.

The fact that the plaintiff when arrested was a convict and had escaped, is for the defendant to show, and it must be shown by competent proof.

5. Competent proof to establish the guilt of the plaintiff is the best which the nature of the case admits. Of his conviction and the time of sentence, the best evidence is the record of that conviction and sentence ; of his escape, parol proof, of course, is admissible ; but the mere oral evidence of the officer who made the arrest and who is one of the defendants, that he afterwards ascertained that plaintiff was an escaped convict, is the merest hearsay, and is not legal evidence at all, unless he ascertained it from plaintiff, which is not pretended.

Inasmuch as the judgment of the court below was not in accordance with the views hereinbefore expressed, except as to the City of Atlanta, it is ordered that the judgment be affirmed in so far as the non-suit in respect to the city is concerned, and that it be reversed as regards the other parties, and a new trial be awarded as to them.

Judgment affirmed in part and reversed in part.