1988. OLIVER TYPEWRITER CO. *v.* FIELDER *et al.*

Section 3667 of the Civil Code of 1895 and the amendments thereto pro-
hibit a creditor from enforcing an obligation, in a note or other evi-
dence of indebtedness, to pay attorney's fees in addition to the lawful
interest specified therein, unless the creditor shall give the prescribed
notice, etc. Its provisions, however, do not apply where the creditor,
not having taken from the principal debtor any obligation to pay at-
torney's fees, makes a distinct and separate contract with a third per-
son, that if he will extend credit to his debtor, and if, as a result thereof,
he has to expend any sum in collecting the indebtedness, he (the third
person) will repay to the creditor the amount so expended.

Certiorari; from Fulton superior court—Judge Ellis. May 28,
1909.

Argued July 20, 1909.—Decided March 4, 1910.

*George B. Rush,* for plaintiff. *V. A. Batchelor,* for defendant.

POWELL, J. A corporation in Atlanta, desiring to obtain the ex-
clusive agency for the sale of a certain typewriter, known as the
Oliver typewriter, in certain territory, entered into a contract with
the Oliver Typewriter Company. Under the contract there was
no obligation to extend credit, but it was provided that should the
typewriter company extend credit to the other contracting party,
the debt should be represented by promissory notes bearing 3 per
cent. interest. Subsequently, to induce an extension of credit to
the corporation referred to, J. W. Fielder and Ivan E. Allen exe-
cuted a separate agreement promising that they would jointly and
severally guarantee the prompt payment of any and all indebted-
ness that the corporation then owed the Oliver Typewriter Com-
pany, or might subsequently owe it, together with interest at 6 per
cent. per annum, and would pay all costs and expenses incurred in
collecting the indebtedness to be created. The notes from the cor-
poration to the Oliver Typewriter Company, it will be remem-
bered, bore interest at 3 per cent., and made no provision for at-
torney's fees or expense of collecting notes. The notes were not
paid at maturity, and it was necessary for the Typewriter Com-
pany to employ an attorney, at an expense of $75, to collect them.
After they had been thus collected, the Oliver Typewriter Com-
pany sued Fielder & Allen for the difference between the 3 per
cent. and the 6 per cent., and for the $75 expense incurred in col-
lecting the notes. The justice of the peace in whose court the case
was originally brought gave judgment both for the difference in

interest and for the expense incurred in the way of attorney's fees. On certiorari, the judge of the superior court sustained the judgment of the lower court, so far as the difference in interest was concerned, but struck off the amount recovered on account of attorney's fees; and this is assigned as error.

The case presents a question as to the proper construction of the Civil Code of 1895, §3667, as amended in 1900 (Acts 1900, p. 53, Van Epps' Code Supplement, §6185). It reads as follows: "Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, are void, and no court shall enforce such agreement to pay attorney's fees unless the debtor shall fail to pay such debt on or before the return day of the court to which suit is brought for the collection of the same; provided, the holder of the obligation sued upon, his agent or attorney, notifies the defendant, in writing, ten days before suit is brought, of his intention to bring suit, and also the term of the court to which suit will be brought." The judge of the superior court in this case, in striking the recovery of attorney's fees, gave as his reason that the notice prescribed in the above-quoted statute had not been given.

This case, as will be seen from the statement of facts, is not an attempt to enforce any agreement contained in the original notes from the principal debtor to the plaintiff, nor is it an attempt to collect from the present defendants (the guarantors) attorney's fees expended in enforcing the liability against them. Fielder & Allen agreed that if the Oliver Typewriter Company would extend certain credit to the corporation, they would indemnify the creditor against a reasonably-to-be-anticipated expenditure. Since the corporation, in contracting with the Typewriter Company, had agreed to pay interest on the indebtedness, the statute above referred to prevented it from agreeing to pay attorney's fees additional to that interest, or rather would have rendered an agreement to pay attorney's fees unenforceable, unless the creditor had given the notice required by the statute, and the other things mentioned therein as conditions precedent to the right to claim attorney's fees had occurred. However, the corporation made no promise to pay attorney's fees, and, therefore, in no event were any collectible from it. No matter what notice the creditor might have given, he could not have charged the corporation, the principal debtor, with

attorney's fees.   Nevertheless, these individuals, the present defendants, upon what the law regards as sufficient consideration, contracted and said, "If you will make this contract with the corporation and agree to take their notes at 3 per cent. interest, we will not only pay you the difference between the 3 per cent. and the 6 per cent. interest, but also will indemnify you against any loss you may incur in collecting the indebtedness from them." This was a separate undertaking.   The present defendants were not joint promisors with the corporation, and could not have been joined in the same suit with it.   There is no attempt here to hold them to any liability upon the first note; therefore there is no attempt to enforce any promise on their part to pay attorney's fees in addition to the interest upon the indebtedness created in that obligation.   It is conceivable that Fielder & Allen, in making their separate and independent contract with the Typewriter Company, might have provided that in the event it was necessary to sue them for the purpose of collecting the indebtedness which their contract with the Typewriter Company contemplated, they would pay, in addition to the amount of liability initiately arising, attorney's fees for the collection of that sum out of themselves, and might have provided that this indebtedness should bear·interest from the time it was ascertained, at say 7 or 8 per cent. per annum.   In that event, in order to hold them to the payment of the attorney's fees, it would have been necessary for the plaintiff to pursue the terms of the statute; but they did not so promise, and there is no effort here to subject them to the payment of attorney's fees for collecting the indebtedness which they assumed under their obligation, and which became liable and owing by reason of what happened in connection with the principal indebtedness between the corporation and the Typewriter Company.

One who studies the above-quoted statute attentively will notice that the legislature apparently did not intend that all obligations to pay attorney's fees should be void.   They were dealing only with obligations to pay attorney's fees upon notes and other evidences of indebtedness, in addition to the rate of interest specified therein; that is, they were legislating against a creditor's collecting out of his principal debtor, or one who joined with him in the original promise, an additional sum as attorney's fees for collecting the indebtedness created therein.   It did not have reference ·to col-

lateral stipulations between the creditor and third persons by which the former might indemnify himself against loss by having to expend money in collecting the indebtedness. For instance, a wholesale merchant is selling goods over a certain territory. He wishes to insure his accounts, or notes taken in lieu of the accounts. He goes to a credit-insurance company, and this insurance company, for a premium, offers to indemnify him not only against loss of his original indebtedness but also against any loss he may incur through expending money in collecting that indebtedness. It would seem perfectly plain that such a case is not within the purview of the act, and that if the merchant collected his accounts, but had to expend money in order to collect them, he might, despite the attorney's fees statute, hold the credit-insurance company to liability for the sums so expended by him. The relation of Fielder & Allen to the present transaction is just what the insurance company's relation would have been to the transaction just mentioned.

Our statute touching the enforcement of promises to pay attorney's fees, it should be remembered, is in derogation of the common law, and is an abridgment of the ordinary right of contract; it is, therefore, to be strictly construed, and not to be extended to a case not clearly falling within its terms. This case does not fall within the letter of the act. Upon its special, particular features it may fall somewhat within what would be the spirit of the act, if the act were to be liberally construed; but it is not clearly within the spirit of the act, and the act is not to be liberally construed. We therefore conclude that the judge of the superior court erred in striking out from the judgment of the justice of the peace the amount recovered for the sums expended by the plaintiff as attorney's fees in collecting the notes from the corporation.

*Judgment reversed.*