**GLOBAL INDUSTRIES, INC.,**
Plaintiff,

v.

J. Wesley HARRIS et al., Defendants.

No. C-74-259-A.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 22, 1974.

Hugh W. Gibert and Richard G. Garrett, Haas, Holland, Levison & Gibert, Atlanta, Ga., for plaintiff.

William R. Mellen and Arthur Gregory, McClain, Mellen, Bowling & Hickman, Atlanta, Ga., for defendants.

## ORDER OF COURT

MOYE, District Judge.

Global Industries, Inc. (hereinafter "Global"), brings this action seeking an order permanently enjoining the above-named defendants from conducting an impending foreclosure sale of a tract of real property located in Bartow County, Georgia. Its federal cause of action is predicated on Sniadach-Fuentes[1] due process grounds, and the jurisdiction of this Court is invoked under 28 U.S.C. § 1331(a).[2] Under the same jurisdictional umbrella, plaintiff also attacks the attorney's fees provision of Ga.Code Ann. § 20–506 on due process and equal protection grounds.

The real property in question was purchased by the plaintiff on January 5, 1973. The property was conveyed to Global, which in turn executed a promissory note for $109,200 and deed to secure debt in favor of the sellers.

Relying on provisions in the note and security deed, defendants subsequently declared the plaintiff to be delinquent in making payments required by the note and began preparation for a foreclosure sale to be held in conformity with the procedure outlined in the deed to secure debt and Ga.Code Ann. § 67–1506. That sale was preliminarily enjoined pending the Court's decision on the merits of this controversy which is set forth below.

Compendious briefs filed by the parties have exhaustively treated every conceivable issue which might fairly be considered germane to resolution of the

---

1. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, reh. denied, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165 (1972). Due to the disposition of this case on other issues, the Court need not decide the extent to which these precedents are affected by Mitchell v. W. T. Grant Co., —— U.S. ——,

94 S.Ct. 1895, 40 L.Ed.2d 406, 42 U.S.L.W. 4671 (1974).

2. 28 U.S.C. § 1331(a) provides:
   "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

case. The Court has read with particular interest those portions dealing with the construction to be placed upon the waiver language in the promissory note and security deed, for it is that issue which is considered to be pivotal.

The power of sale found in the deed to secure debt recites that upon default of the grantor (Global), the grantee is empowered to sell the property in a manner prescribed therein.[3] The procedure outlined is substantially identical to the one prescribed in Ga.Code Ann. § 67–1506. But the power of sale, plaintiff contends, does not authorize the grantee to unilaterally determine the existence of a default. Global acknowledges that it waived its right to insist that the defendants sell the property by means of judicial foreclosure but asserts that only a judicial declaration of default preceded by notice and a hearing can constitutionally serve to "trigger" the foreclosure mechanism.

The documents, when read individually and in conjunction with one another, do not lend themselves to such an interpretation. Examination of the aforementioned power of sale reveals that the grantee, as agent and attorney in fact of the grantor, is empowered to execute

and deliver to the purchaser at the foreclosure sale a conveyance which may contain recitals as to the occurrence of default. The recitals are made binding and conclusive upon the grantor. The security deed also sets forth the procedures to be followed after default and provides that all other notice is waived by the grantor.

Several provisions contained in the promissory note dated January 5, 1973, lend further credence to the defendants' position. The note states, in pertinent part, that:

"Should any installment not be paid when due, or should the maker, or makers, hereof fail to comply with any of the terms or requirements of a security deed of even date herewith, . . . the entire unpaid principal sum evidenced by this note, with all accrued interest, shall, at the option of the holder, and without notice to the undersigned, become due and may be collected forthwith, time being of the essence of this contract."

This language is amplified in a succeeding section which provides that "each of the undersigned, . . . further waives demand, protest, notice of demand, protest and non-payment."

---

3. The power of sale reads:

"In case the debt hereby secured shall not be paid when it becomes due by maturity in due course, or by reason of a default as herein provided, Grantor hereby grants to Grantee, the following irrevocable power of attorney: To sell all or any part of the said property at auction, at the usual place for conducting sales at the Court House in the County where the land or any part thereof lies, in said State, to the highest bidder for cash, after advertising the time, terms and place of such sale once a week for four weeks immediately preceding such sale (but without regard to the number of days) in a newspaper published in the County where the land or any part thereof lies, or in the paper in which the Sheriff's advertisements for such County are published, all other notice being hereby waived by Grantor, and Grantee (or any person on behalf of Grantee) may bid and purchase at such sale and thereupon execute and deliver to the purchaser or purchasers at such sale a sufficient conveyance of said property in

fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale herein granted depends, and Grantor hereby constitutes and appoints Grantee the agent and attorney in fact of Grantor to make such recitals, and hereby covenants and agrees that the recitals so made by Grantee shall be binding and conclusive upon Grantor, and that the conveyance to be made by Grantee shall be effectual to bar equity of redemption of Grantor in and to said property, and Grantee shall collect the proceeds of such sale, and after reserving therefrom the entire amount of principal and interest due, together with the amount of taxes, assessments and premiums of insurance or other payments theretofore paid by Grantee, with eight per centum per annum thereon from date of payment, together with all costs and expenses of sale and ten per centum of the aggregate amount due for attorney's fees, shall pay any over-plus to Grantor as provided by law."

■ The Court is fully aware that waivers of constitutional rights may not be implied. Fuentes v. Shevin, *supra*. And were the meaning that the defendants ascribe to the documents merely lurking in the interstices of the language, a contrary result might obtain. The import of the above-quoted provisions is clear, however. The defendants are authorized to conduct a foreclosure sale in the manner set forth in the security deed without having first to resort to judicial process, whenever they deem the plaintiff to be in default. Any other interpretation would frustrate the intent of the parties as expressed by their written agreements. Both the note and the security deed recite that time is of the essence. The obvious advantage of the waiver provisions to the creditor is to free him from cumbersome and time-consuming foreclosure procedures. Undeniably, there is potential for abuse attendant to any such grant of authority, but by the terms of the agreement it is incumbent upon the debtor to initiate injunctive proceedings should he feel that foreclosure has been undertaken erroneously or in bad faith.[4]

Michael Thevis, Chairman of the Board of Global, has testified by affidavit that he did not understand or intend that such a power be conferred upon the holders of the security deed. The thrust of Thevis's statement is that any waiver of the right to notice and a hearing which might be found in the instruments was not knowingly and intelligently made. Fuentes v. Shevin, *supra;* D. H. Overmyer Co. v. Frick Co., 405 U. S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); Gonzalez v. County of Hidalgo, 489 F.2d 1043 (5th Cir. 1973).

■ Consonant with the *Overmyer* opinion, this Court recognizes the well-settled presumption against waiver of fundamental rights and will assume *arguendo* that waivers in a civil contest must be as closely scrutinized as those in criminal cases. Nevertheless, it is undisputed that the documents which this Court construes to constitute a waiver of any due process rights the plaintiff might otherwise have had, were executed by Global with the advice of counsel. In fact, the closing was held in the offices of Global's attorneys, and the defendants were not represented at the closing. Furthermore, the documents were presented and presumably prepared by counsel for Global. Under these circumstances, the Court does not feel that the plaintiff can later be heard to disclaim knowledge of their purport and meaning.

■ Global does not contend, nor would the facts support a finding, that a disparity of bargaining power existed or that the contractual provisions under consideration resulted from overreaching. The plaintiff has failed to demonstrate that the security deed and note constitute other than a contractual arrangement whereby it agreed to waive judicial process prior to foreclosure. That agreement would stand as a product of the parties' freedom to contract even in the absence of the challenged code section and would survive a declaration of that statute's unconstitutionality. See Adams v. Southern California First Nat'l Bank, 492 F.2d 324 (9th Cir. 1973).

■■ The Court also notes that the plaintiff must establish as a factual predicate to any claim under the due process clause of the Fourteenth Amendment a significant degree of state involvement in the action(s) complained of. *E. g.*, Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Reitman v. Mulkey, 387 U. S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Bond v. Dentzer, 494 F.2d 302 (2d Cir. 1974). Whether the state has sufficiently interjected itself into the challenged conduct must be determined by weighing the facts and

---

4. Global also advances in this action; the pendant state claim that it was not in default of its obligations under the note. See *infra*.

circumstances of each particular case. Burton v. Wilmington Parking Authority, *supra.*

■ Global points to Ga.Code Ann. § 67–1506 as providing the requisite state action in this case.[5] That statute, to be sure, regulates the manner in which foreclosure sales under powers contained in security deeds are conducted. But the creditor's power of sale is derived from the parties' contractual undertaking rather than from the statute. As Chief Judge Smith of this district recently observed:

> "[Section 67–1506], however, unlike the personal property foreclosure acts, does not itself create any rights in creditors. Rather, its terms are limiting. . . .
>
> "Thus, the legislative mandate sets minimal requirements for the exercise of any contractual power of sale contained in security instruments. In this sense, it may be deemed protective of consumer interests. The statute does not come into operation unless there already exists a power of sale contained in a deed to secure debt, mortgage, or other lien contract. It does not direct that a power of sale be employed; it merely specifies the minimal procedures to be employed once the parties have entered into a contractual relation."

Law v. United States Dept. of Agriculture, 366 F.Supp. 1233, 1238 (N.D.Ga. 1973). See also Ruff v. Lee,[6] 230 Ga. 426, 432, 197 S.E.2d 376 (1973), Gunter, J., concurring.

Thus, as noted above, the parties' right privately to agree to the remedy of

nonjudicial foreclosure exists independently of the statute. The statute does not deprive a debtor of any preexisting rights or entitlements. Bond v. Dentzer, *supra* at 307; Adams v. Southern Calif. First Nat'l Bank, *supra* at 333.

■■ The Court finds little significance in the fact that a clerk may perform the ministerial act of recording the deed under power evidencing sale [7] or that the courts of the State of Georgia may enforce the agreement the parties have made.[8] Were those factors considered determinative, every private agreement between citizens would be imbued with state action. Nor does the statutory requirement that the foreclosure sale take place on the courthouse steps approach the degree of "entwinement" between private and state interests necessary to bring the present case within Burton v. Wilmington Parking Authority, *supra.* See Bond v. Dentzer, *supra* at 305; Adams v. Southern California First Nat'l Bank, *supra,* at 332–333.

Both *Bond,* which found no significant state participation in New York's private wage assignment scheme, and *Adams,* which upheld the constitutionality of Section 9–503 of the Uniform Commercial Code, emphasized that the mere enactment of a statute does not constitute "encouragement" of a particular course of conduct. Both decisions distinguished Reitman v. Mulkey, *supra,* on the grounds that the legislative enactment there involved fomented discrimination by repealing former law and by impeding change. That decision, accordingly, has no application to the case at bar.

---

5. Ga.Code Ann. § 67–1506 provides:
   "No sale of real estate under powers contained in mortgages, debt, deeds, or other lien contracts shall be valid unless the sale shall be advertised and conducted at the time and place and in the usual manner of sheriff's sales in the county in which the real estate, or a part thereof, is located."

6. Both *Law* and *Ruff* rejected arguments that Section 67–1506 is violative of due process. The constitutionality of Section

67–1506's statutory progenitor was upheld in Scott v. Paisley, 271 U.S. 632, 46 S.Ct. 591, 70 L.Ed. 1123 (1926).

7. In Sniadach v. Family Finance Corp., *supra,* the state participated more intimately in the implementation of the offensive conduct. See Bond v. Dentzer, *supra,* at 305.

8. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), was rejected as a basis for finding state action under the facts in *Bond* and *Adams, supra.*

The *Bond* and *Adams* opinions exhaustively analyzed, distinguished and rejected every remaining case and state action rationale advanced by the plaintiff. It would require considerable temerity for a district judge to ignore the well-considered opinions of the Second and Ninth as well as the Eighth [9] Circuit Court of Appeals. Consequently, this Court can only conclude that the plaintiff has failed to state a federal cause of action, and the complaint is therefore dismissed insofar as it seeks relief on constitutional grounds from the threatened foreclosure.

The promissory note executed by Global also contained the following proviso:

"Should this note, or any part of the indebtedness evidenced hereby, be collected at law or through an Attorney-at-Law, the holder shall be entitled to collect attorney's fees in an amount equal to ten (10) per cent of the principal and interest, and all costs of collection."

The plaintiff seeks to have this Court enjoin the defendants from imposing attorney's fees on the grounds that imposition is authorized by a statute which is repugnant to the due process and equal protection clauses of the Fourteenth Amendment. The statute, Ga.Code Ann. § 20–506,[10] is said to deprive the plaintiff of due process because it operates in conjunction with the unilateral declaration of default provisions previously discussed to inhibit free access to the courts. The plaintiff alleges a denial of equal protection on the grounds that a similar provision in favor of a debtor would be void under state law as a penalty.

With respect to state action, Global makes many of the same arguments which the Court has rejected above. Primary reliance is placed upon the district court's holding in Bond v. Dentzer, 362 F.Supp. 1373 (N.D.N.Y.1973), which was reversed by the Second Circuit Court of Appeals.

The single remaining contention is that Ga.Code Ann. § 20–506 validates

---

9. The United States Court of Appeals for the Eighth Circuit recently held that self-help repossession pursuant to UCC § 9–503 evidenced no significant state participation. Bichel Optical Laboratories, Inc. v. Marquette Nat'l Bank of Minneapolis, 487 F.2d 906 (8th Cir. 1973).

10. Ga.Code Ann. § 20–506 provides:

"Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable, and collectible as a part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity, subject to the following provisions:

"(a) If such note or other evidence of indebtedness provides for attorney's fees in some specific per cent. of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 per cent. of the principal and interest owing on said note or other evidence of indebtedness.

"(b) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees, without specifying any specific per cent., such provision shall be construed to mean 15 per cent. of

the first $500 principal and interest owing on such note or other evidence of indebtedness, and 10 per cent. of the amount of principal and interest owing thereon in excess of $500.

"(c) The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. The refusal of a debtor to accept delivery of the notice hereinbefore specified shall be the equivalent of such notice.

"(d) Obligations to pay attorney's fees contained in security deeds and bills of sale to secure debt shall be subject to provisions of this section where applicable."

the attorney's fees provision where. it would otherwise be void as a penalty.[11] Yet, Global is unable to cite a single Georgia decision in which an attorney's fee agreement such as the one presently under consideration was declared unenforceable as a penalty. Were this the only information available, the Court would be understandably hesitant to find state action and to proceed to declare a state statute unconstitutional, for to do so would be an exercise in conjecture and speculation.

It is further apparent, however, that the proscription against penalties codified in Ga.Code Ann. § 20–1403 [12] existed at common law. See, *e. g.*, Mayor and Council of Washington v. Potomac Engineering and Construction Co., 132 Ga. 849, 65 S.E. 80 (1909); Florence Wagon Works v. Salmon, 8 Ga.App. 197, 68 S.E. 866 (1910). Notwithstanding this fact the Georgia Court of Appeals in Keating v. Woods-Young Co., 42 Ga. App. 63, 155 S.E. 206 (1930), upheld a stipulation which provided for the payment of attorney's fees in relation to the defendant's entire indebtedness under the contract. In so doing the court observed at page 72, 155 S.E. at page 210:

"[T]he contract for attorney's fees appears to be legal, since there was no objection to such a contract at common law. Merck v. American Freehold Land Mortgage Co., 79 Ga. 213(3) (7 S.E. 265); National Bank of Athens v. Danforth, 80 Ga. 55(8) (7 S.E. 546); Demere v. Germania Bank, 116 Ga. 317 (42 S.E 488); Oliver Typewriter Co. v. Fielder, 7 Ga.App. 525 (67 S.E. 210). The Georgia statute upon the subject (Civil Code of 1910, § 4252) is not the origin of all right to recover attorney's

fees in this State; that is to say, it does not give a right where none existed at common law; on the other hand, it merely restricted a right which the common law recognized."

■ Given this authority and Global's failure to cite any other in support of its contentions, the Court must conclude that the plaintiff has not borne the burden of demonstrating state action with respect to the attorney's fees agreement.

■ The final matter before the Court is the plaintiff's motion to permanently enjoin the aforementioned foreclosure sale on the grounds that it has in fact honored its obligations under the promissory note. Both parties acknowledge that this is a state claim over which the Court may, at its discretion, take pendant jurisdiction. In United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court stated: "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."

Since the plaintiff's federal claims will not require a factual hearing in this Court and because no discernible prejudice to the plaintiff would result from requiring it to prosecute its state claim in the state courts of Georgia, the power of pendant jurisdiction will not be exercised in this case.

In summary, the Court finds that Global has failed to state a federal claim with respect to the foreclosure and attorney's fees issues. The Court declines to take pendant jurisdiction over the plaintiff's state claims course of action. The preliminary injunction previously issued by this Court is hereby dissolved,

---

11. Like Section 67–1506, regulating sales under powers in security deeds, Section 20–506 does not come into play unless there is a preexisting agreement between the parties to pay attorney's fees upon a note or other evidence of indebtedness. Aultman v. Taylor Fertilizer Works, 125 Ga.App. 398, 401, 188 S.E.2d 157 (1972).

12. Ga.Code Ann. § 20–1403 reads:
"Penalties in bonds are not liquidated damages; and even if called such, yet, if it appears unreasonable and · not so actually intended by the parties, the law will give only the actual damages, and in all cases where the damage is capable of computation, and is not uncertain in its character, such stipulations will be declared to be penalties."

the motion for a permanent injunction is denied. Since it appears that the plaintiff can offer no additional facts in support of its claim, a final hearing or trial on the merits is unnecessary and this case is accordingly ordered dismissed.